FILED
U.S. DISTRICT COURT E.D.N.Y.
★ APR 2007 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHRISTOPHER D. BODKIN,

                      Plaintiff,

-against-

ROBERT GARFINKLE, INDIVIDUALLY
AND AS REPUBLICAN COMMISSIONER
OF THE SUFFOLK COUNTY BOARD OF
ELECTIONS and ANITA KATZ,
INDIVIDUALLY AND AS DEMOCRATIC
MEMBER OF THE SUFFOLK COUNTY
BOARD OF ELECTIONS,

                      Defendants.
----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 05-4306

(Wexler, J.)

APPEARANCES:

    ELIOT F. BLOOM, ESQ.
    114 Old Country Road Suite 308
    Mineola, New York 11501
    Attorney for Plaintiff

    CHRISTINE MALAFI, ESQ.
    SUFFOLK COUNTY ATTORNEY
    BY: DENNIS M. BROWN, ESQ., Assistant County Attorney
    Attorney for Defendant
    P.O. Box 6100
    Hauppauge, New York 11788

WEXLER, District Judge

This is a civil rights action commenced by Christopher Bodkin ("Bodkin" or "Plaintiff"), against Robert Garfinkle ("Garfinkle") the Republican member of the Suffolk County Board of Elections ("BOE") and Anita Katz ("Katz"), the Democratic member of the BOE (collectively "Defendants"). Bodkin currently sits on the Town Council of the Town of Islip, New York.

This lawsuit alleges the violation of Bodkin's rights during the primary election process that preceded his 2005 election. Although the complaint set forth causes of action based upon state law as well as Plaintiff's due process rights pursuant to the Fourteenth Amendment to the United States Constitution, this court's ruling on an earlier motion to dismiss has left Plaintiff with a single cause of action. Specifically, the only remaining claim is that Defendants deprived Plaintiff of his Fourteenth Amendment Constitutional right to equal protection of the law.

Discovery is now complete and presently before the court is Defendants' motion for summary judgment as to the single claim that survived the motion to dismiss. Defendants seek summary judgment on the ground of qualified immunity as well as on the merits of the equal protection claim. For the reasons that follow, the motion is granted and the case is dismissed in its entirety.

## BACKGROUND

### I. Action of the BOE and State Court Proceedings

Bodkin's case emerges out of the 2005 election for members of the Islip Town Council. The facts forming the basis of the complaint are set forth in this court's decision on Defendants' motion to dismiss. Familiarity with such facts is assumed. The court reiterates the facts here in brief and adds additional, uncontroverted facts adduced in the course of discovery.

Beginning in 1992 and prior to the 2005 election, Bodkin continually received the endorsement of the Republican Party for an Islip Town Council seat. Plaintiff testified that he was advised that he would not be receiving the Republican endorsement in 2005 because he no longer supported the Republican town supervisor then in office. Plaintiff therefore decided to run a primary campaign for the Republican nomination. In connection with that campaign, and

to assist Plaintiff in his attempt to obtain signatures for his nominating petition, the BOE provided Plaintiff with information regarding the identity of Islip registered Republicans. Plaintiff asserts no obstacles placed in his way during the signature collection process by either the BOE or either of the named Defendants.

On July 14, 2005, after obtaining over 4,000 signatures, Plaintiff submitted his nominating petition to the BOE. General objections to the petition were filed on July 18, 2005 and specific, sworn objections were filed on July 25, 2005. The citizens filing those objections have been identified as Frank Smith, Richard Albanese and Kathleen Kruger. The objections filed by these three citizens were the same and included allegations that signatures obtained were fraudulent. Significantly, the signatures identified in the objections were sufficient in number to disqualify Bodkin's nominating petition. On July 29, 2005, the BOE, by the votes of Defendants Garfinkle and Katz, voted to invalidate the petition. Plaintiff was mailed and received notification of the action of the BOE by a formal letter of invalidation.

After receiving notice of the invalidation, Plaintiff filed an order to show cause in New York State Court contesting the BOE decision, seeking a ruling that his nominating petition was valid and an order placing his name on the ballot. Plaintiff acknowledged the submission of objections to the BOE on July 18 and 25, 2005, but argued that those objections were "insufficient, defective and invalid." It was further alleged that the determination of the BOE was made in violation of both the rules of the BOE and the New York State Election Law.

The State Court Justice to whom the matter was originally assigned recused himself as did other Suffolk County Justices. A hearing was ultimately held on Plaintiff's application before a Nassau County Justice of the New York State Supreme Court. On August 19, 2005, that court

noted objection to approximately 3500 of 4400 signatures. Holding that the New York State Election Law gives a presumption of validity to signatures on nominating petitions, the court held that the petition to invalidate the decision of the BOE should be granted and directed that Plaintiff's name be placed on the ballot.

The decision of the trial court was appealed and thereafter reversed by the Appellate Division of the Supreme Court, Second Department. The Appellate Division held that it was the court's responsibility, and not that of the BOE, to address the validity of each of the objections filed. The matter was remitted to the trial court "for a line-by-line consideration" of the nominating petition in light of specific objections. On September 7, 2005, the Supreme Court, Nassau County, undertook the line-by-line review mandated by the Appellate Division and directed the BOE to place Plaintiff's name on the primary ballot. Plaintiff won the primary election and was thereafter elected to the Town Council.

II.     The Federal Complaint and the Motion to Dismiss

In the context of this action, Plaintiff continues to litigate the matter of the propriety of Defendants' July 29, 2005 decision to invalidate his nominating petition. Here, Plaintiff asserts that Defendants "acted with actual malice . . . and with willful and wanton indifference to and deliberate disregard for [his] statutory and constitutional rights." It is further alleged that Defendants acted "intentionally, and in knowing disregard for the law, in voting for, and causing, the invalidation of Plaintiff's petition, which was proper and valid."

The complaint alleges a deprivation of Plaintiff's federal constitutional rights to due process and equal protection as well as a conspiracy to violate these rights. In a memorandum and order dated January 30, 2006, this court granted Defendants' motion to dismiss all of

4

Plaintiff's claims except for the claim based upon the deprivation of Plaintiff's equal protection rights. As to that claim, Plaintiff claims disparate treatment based upon the difference between his political goals and those of competing Republican candidates. With regard to damages, Plaintiff claims a deprivation of constitutional rights as well as monetary loss. He seeks compensatory damages in the amount of $200,000 and exemplary damages in the amount of $2 million.

III. Discovery

After this court's decision on the motion to dismiss, the parties commenced discovery. Prior to the conference required by Rule 26 of the Federal Rules of Civil Procedure, Plaintiff served subpoenas on Frank Smith and Richard Albanese. These non-parties moved to quash. In an order dated April 4, 2006, Magistrate Judge Lindsay granted the motion to quash on the ground that the subpoenas were served in violation of the Federal Rules' requirement that the parties meet and confer prior to service of such discovery. Thereafter, Magistrate Judge Lindsay proposed, and the parties expressly accepted, a discovery scheduling order setting October 18, 2006, as the date for completion of discovery. A final conference before Magistrate Judge Lindsay was scheduled for November 21, 2006.

On October 16, 2007, a day before the close of discovery, Plaintiff's counsel wrote to Magistrate Judge Lindsay stating that the deposition of Defendants had not been taken and requesting an extension of the discovery deadline. That letter informed the Magistrate Judge that all other required discovery, including the deposition of the Plaintiff, was complete. In an order dated October 30, 2006, Magistrate Judge Lindsay extended the discovery deadline for the limited purpose of permitting Plaintiff to depose Defendants. Those depositions were ordered to

be taken during the week of November 13, 2006.

On November 26, 2006, Plaintiff submitted a letter application to Magistrate Judge Lindsay seeking to re-open discovery for the purpose of taking non-party depositions of the two previously subpoenaed non-parties, as well as non-parties Vincent Messina and Kathleen Kruger. Plaintiff argued that good cause existed to re-open discovery on the ground that it was not until the taking of Defendants' depositions that it became clear that these non-parties possessed information important to the case.

Denying the request to re-open discovery, Magistrate Judge Lindsay referred to Plaintiffs' earlier request to extend the discovery deadline and the representation that, with the exception of the depositions of Defendants, all discovery was complete. The Magistrate Judge further noted that Plaintiff's representation as to the newly discovered importance of these witnesses was belied by the record. It was noted that the identities of Kruger, Smith and Albanese, as citizen objectors to Plaintiff's request to be placed on the primary ballot, were known to Plaintiff since at least July of 2005. Further, the identity of all four of these witnesses was disclosed to Plaintiff in automatic disclosure dated March 12, 2006 and referred to by Plaintiff in correspondence to the court dated March 31, 2006. Finally, the premature subpoenas ordered quashed by the Magistrate Judge in March of 2006 were directed to Smith and Albanese. The subpoenas were never re-served and Plaintiff never requested discovery of these witnesses during the time period when discovery was open. In light of these facts, Magistrate Judge Lindsay held that Plaintiff failed to show good cause to re-open discovery and denied Plaintiff's request. Plaintiff appealed the decision denying the request to re-open discovery and, in an order dated January 23, 2007, this court affirmed the decision of Magistrate Judge Lindsay.

## IV. The Motion For Summary Judgment

Defendants move for summary judgment on the single claim remaining in this action, i.e., that Defendants violated Plaintiff's right to equal protection. In support of the motion, Defendants argue that Plaintiff has adduced no evidence creating an issue of fact regarding the deprivation of his constitutional right. Plaintiff opposes the motion on the merits and on the ground that he has been denied discovery that would support his claim. After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

## I. Standards for Granting A Motion For Summary Judgment

The standards for granting summary judgment are familiar. In the content of such a motion, the court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden of production thereafter shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his or her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences

in that party's favor, <u>Abramson v. Pataki</u>, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment must come forward with evidentiary support. <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525-26 (2d Cir.1994). He may not rest upon mere allegations or denials asserted in his pleadings, <u>Rexnord</u>, 21 F.3d at 526, or on conclusory allegations or unsubstantiated speculation. <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d. Cir.1998).

II.    <u>Stating An Equal Protection Civil Rights Claims</u>

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), a plaintiff must show deprivation of a constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; <u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993); <u>Millar v. Ojima</u>, 354 F. Supp.2d 220, 226 (E.D.N.Y. 2005). Plaintiff's sole remaining claim alleges the deprivation of his Fourteenth Amendment Constitutional right to equal protection. The factual underpinning of this claim is that Defendants treated Plaintiff differently from other Republican candidates. It is further alleged that in making this unlawful distinction, Defendants' "acted with actual malice . . . and with willful and wanton indifference to and deliberate disregard for plaintiff's statutory and constitutional rights" and that Defendants "acted intentionally, and in knowing disregard for the law, in voting for, and causing, the invalidation of the [Plaintiff's] petitions, which, in all aspects, were proper and valid."

As noted in this court's earlier opinion, the Fourteenth Amendment right to equal protection of the law is "essentially a direction that all persons similarly situated be treated alike." <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985); <u>Disabled American Veterans v. United States Dep't. of Veterans Affairs</u>, 962 F.2d 136, 141 (2d Cir. 1992). To establish an equal protection violation, a plaintiff must show: (1) that he was treated

8

differently from other similarly situated individuals and (2) that this treatment was based upon an impermissible consideration such as race, religion or "an intent to inhibit or punish the exercise of" a constitutional right. Stubbs v. Simone, 2005 WL 2429913 * 16 (S.D.N.Y. 2005), quoting, Harlen Assoc. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). A plaintiff may also claim selective treatment from others similarly situated based upon either a malicious intent to injure or treatment that was irrational and lacking completely in any rational basis. E.g., Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005); see also Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

To satisfy the first prong of a selective treatment equal protection claim, plaintiff must present evidence that he was treated differently than others similarly situated. Where, as here, a plaintiff claims to be a part of a "class of one," "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir.2005); see Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). The test of similarity is a showing that: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Neilson, 409 F.3d at 105.

A valid equal protection claim based upon the constitutional right of access to the ballot requires a showing of "intentional or purposeful discrimination." Diaz v. New York City Bd. of Elections, 335 F. Supp.2d 364, 367-68 (E.D.N.Y. 2004), quoting, Dill v. Lake Pleasant Central Sch. Dist., 205 F. Supp.2d 24, 33 (N.D.N.Y. 2002), quoting, Gold v. Feinberg, 101 F.3d 796, 800

(2d Cir. 1996); Strong, 872 F. Supp. at 1164; see Strong v. Suffolk County Bd. of Elections, 872 F. Supp. 1160, 1164 (E.D.N.Y. 1994); Williams v. Sclafani, 444 F. Supp. 906, 911 (S.D.N.Y. 1978). Accordingly, to defeat summary judgment, Plaintiff must create an issue of fact as to whether Defendants acted with intentional discrimination and allegations of "erroneous or arbitrary administration of state election laws" are insufficient. Diaz, 335 F. Supp.2d at 367-68; see also Gelb v. Bd. of Elections of the City of New York, 224 F.3d 149, 154 (2d Cir. 2000) (referring to "thirty year doctrine" in Circuit that civil rights action is not available to remedy election process errors in the absence of a showing of "intentional or purposeful discrimination"), quoting Powell, 436 F.2d at 88. An equal protection claim based upon the allegation of either a malicious intent to injure or irrational treatment requires Plaintiff to prove more than the fact that the decision to reject his nominating petition was wrong – he must prove that the decision was motivated by malicious bad faith or intent to injure. Bizzarro, 394 F.3d at 86.

## III. Disposition of the Motion for Summary Judgment

As noted in this court's opinion on Defendants' motion to dismiss, Plaintiff's complaint alleged intentional discrimination in only the most general of terms. In light of the liberal pleading allowed under the Federal Rules and the mandate that all factual allegations be accepted as true, the court held that the equal protection claim was sufficient to survive. After the taking of discovery, however, it becomes clear that Plaintiff has not created an issue of fact as to disparate treatment or intentional discrimination and the claim must therefore be dismissed.

In support of their motion for summary judgment, Defendants rely on deposition testimony as well as affidavits detailing the actions of the BOE. Defendants Katz and Garfinkle testified that they received the general and specific objections to the Bodkin nominating petition

in the time frame set forth in the Election Law. Defendants further testified that the specific objections were sworn to, were unique in degree and scope and raised serious issues as to the validity of the petition. Specifically, Katz testified that the objections alleged that more than half of the signatures were fraudulent and that Bodkin may have committed fraud in obtaining signatures. Similarly, Garfinkle testified as to the significant fraud alleged in the objections. Prior to her receipt of the objections, Katz testified that she received no communication from any person with respect to the Bodkin petition. Neither Katz nor Garfinkle were personally acquainted with the individuals filing the objections to the Bodkin petition. Both Defendants testified that Bodkin's attorney called them to request a swift determination as to the validity of his client's petition so that the matter could be finally determined in court. After reviewing the objections, Katz conferred with Garfinkle. Defendants testified that the decision to invalidate the Bodkin petition was made solely upon their review of the affidavits submitted in support of the objections. Together, they acted on the objections, deciding them to be sufficient to invalidate Bodkin's petition. The BOE thereafter sent timely written notice of its determination as required by the New York State Election Law.

Defendants' submission also details the New York State court litigation following the invalidation. Ultimately, and in accord with the final judicial determination as to the propriety of Bodkin's petition, the BOE ordered Bodkin's name added to the ballot.

In opposition to Defendants' submission in support of their summary judgment motion, Plaintiff adds little or nothing to the allegations of his complaint. As to the first component of an equal protection claim, Plaintiff continues to allege differential treatment from "other Republican candidates." Despite the opportunity to engage in discovery, Plaintiff does not point to a single

case with which he can compare his own so as to demonstrate that he was treated differently from other similarly situated individuals. While Plaintiff makes the assertion that not a single other candidate's petition was subject to the same scrutiny as his, he does not identify the other candidates to whom he refers. Nor does he point to a case where sworn objections were treated differently that in his case. Where, as here, Plaintiff identifies no individual or entity as similarly situated, summary judgment is appropriate because "no reasonable jury could find that the persons to whom the plaintiff compares [himself] are similarly situated" Clubside, 468 F.3d at 159.

Additionally, Plaintiff fails to create an issue of fact as to his allegation that Defendants acted maliciously when reaching the decision to disqualify his petition. Plaintiff continues to assert that Defendants acted with wilful and wanton indifference and deliberate disregard for his constitutional rights. There is, however, no evidence submitted to support this claim. With the exception of testifying at his deposition that he "heard" of ill will that was allegedly the "talk of the town," Plaintiff has come forward with no evidence to support his claim of intent to harm. Indeed, at his deposition, Plaintiff testified that he knew of no conversations involving either of the Defendants with any other individual regarding the rejection of his nominating petition. While Garfinkle testified as to having a cigar with the Islip Town attorney in or around the time of invalidation of the Bodkin petition, the fact of this informal meeting adds nothing to Bodkin's allegations of malicious intent. Indeed, when asked whether he had any witnesses to support the allegation that Defendants Katz and Garfinkle acted with intent to harm his candidacy, Bodkin replied that he knew of no witnesses to support the allegation and pointed only to the fact that, of all of the people who ran in the county, he and another candidate were the only to have their

petitions rejected. As noted above, this allegation does nothing to amplify his claim regarding selective treatment. Moreover, it is insufficient to support a claim of ill will. In effect, Plaintiff relies only on the fact that his petition was rejected as evidence of an equal protection violation. This is not enough to allow the case to proceed to trial.

As a final matter, the court rejects Plaintiff's argument regarding the lack of an opportunity to engage in discovery to support his claim. As noted, the parties expressly accepted the discovery schedule set forth by Magistrate Judge Lindsay. After indicating that all other discovery was complete, the schedule was extended to allow Plaintiff to depose Defendants. In a ruling affirmed by this court, the Magistrate Judge refused to find good cause to further extend the deadline to provide for discovery from witnesses of whom Plaintiff was earlier aware and which should have been earlier sought. The court also rejects Plaintiff's claim that he was denied documentary discovery sought during the depositions of Defendants. While counsel made a vague request for certain documents during the course of the depositions, the request was neither preceded by nor followed up with a proper discovery demand. Moreover, no pending request for documents was ever brought to the attention of Magistrate Judge Lindsay. In short, despite being given every opportunity to seek and obtain timely discovery, Plaintiff has come forward with no evidence to support his claim.

To summarize, not only has Plaintiff come forward with no similarly situated individuals to whom he can be compared, he has come forward with no evidence support his allegations of ill will and malicious intent on the part of Defendants. Plaintiffs' failure to come forward with any evidence in support of his claim, after having the full opportunity to conduct discovery, leaves this court to consider only the evidence set forth by Defendants in support of their

summary judgment motion. That evidence indicates that when faced with duly filed and sworn objections to Bodkin's nominating petition, Defendants acted within the scope of their duties and rejected the petition. Having come forward with facts indicating the propriety of their acts, the burden is on Plaintiff to create an issue of fact as to his allegations of ill intent. Because he has come forward with nothing more than generalized accusations, devoid of "specific facts from which constitutional malice" may be inferred, Plaintiff creates no such issue. See <u>Sound Aircraft Servs. v. Town of East Hampton</u>, 192 F.3d 329, 336 (2d Cir. 1999). Defendants are therefore entitled to the entry of summary judgment.[1]

## CONCLUSION

Defendants' motion for summary judgment dismissing Plaintiff's equal protection claim is granted. The Clerk of the Court is directed to terminate the motion for summary judgment, enter judgment in favor of Defendants and to close the file in this matter.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
April 26, 2007

---

[1] Defendants have also raised the issue of qualified immunity. The court's holding as to Plaintiff's inability to create an issue of fact on the merits renders a ruling as to qualified immunity unnecessary.